1841.

Judd
v.
Seaver.

---

### Judd and others *vs.* Seaver and others.

Where the holder of a valid note sells it for less than the amount due thereon, and endorses it to the purchaser, the latter is entitled to recover the whole amount of the note from the maker and prior endorsers ; but can only recover from the seller, on his endorsement, the amount of the purchase money, and interest thereon from the time of the purchase.

And where the purchaser of such note procures a renewal of the note, by the same makers and endorsers, after it has been duly protested for non-payment, if the renewed note is void on the ground that an usurious premium was received for the extension of credit upon such renewal, the rights of the purchaser remain the same against the makers and endorsers of the original note. And he may recover against them the amount for which they were liable before such renewal, after deducting therefrom the amount of the usurious premium received by him on the renewal.

Where a valid note is purchased for less than the amount due thereon, and is endorsed in blank by the seller, and the purchaser afterwards sells the note to another, who purchases it without notice that the prior purchaser was not entitled to recover the full amount of the note against his immediate endorser, whereby the last purchaser is enabled to recover the whole face of the note, with interest, against such endorser, the latter may recover back, from the person to whom he sold the note, the excess which he has been compelled to pay beyond the amount of the purchase money and, interest.

Under the provisions of the revised statutes, as they existed previous to the act of May 1837, the bona fide purchaser of an usurious note, who had notice that it was usurious before he had fully paid for the same, can only recover from the maker to the extent of the purchase money which had been paid by him before he was notified that the note was usurious.

Upon a bill in chancery for relief against a usurious contract, the court is not authorised to decree payment to the defendant of the amount equitably due, unless the complainant has given the court authority to make such a decree, by offering in his bill to pay whatever is equitably due.

The admissions in the answer of one of the defendants in a suit are not evidence against his co-defendant. But where one co partner, in a joint and several answer put in by both, makes admissions as to his own acts rel-

ative to the business of the firm, and the other co-partner states his belief that what is thus admitted by his co-partner is true, a decree may be made against both upon such admissions.

1841.

Judd
v.
Seaver.

January 25.

THIS was an appeal from a decree of the late vice chancellor of the eighth circuit. The facts in the case, so far as they could be ascertained by the admissions of the defendant Follett in the joint and several answer put in by him and his copartner A. C. Stevens, were as follows : On the 8th of June, 1832, A. Hawkins, one of the complainants, came to the office of Follett & Stevens, who were brokers—Follett alone being present—and offered to sell them a negotiable note which Hawkins then had in his possession, for the sum of $300, drawn by G. J. Judd and endorsed by L. Judd, the other complainants in this suit ; which note was dated the 3d of June, and was payable at the Bank of Genesee three months after date. Follett agreed to purchase the note, and to pay $279 therefor, provided Hawkins would endorse it ; which the latter agreed to do, and received that amount from the partnership funds of Follett & Stevens. When the note became due, it was protested for non-payment. Hawkins thereupon applied for an extension of credit ; and Follett, in behalf of himself and Stevens, agreed to take a new note for the $300, drawn and endorsed in the same manner, payable at the same bank in three months, upon receiving a premium of $21 and the interest on the note for three months. The note was renewed accordingly on the 10th of September, 1832, and the premium of $21 was paid. When this note became due it was protested for non-payment. In December, 1832, probably a short time after the dishonor of the note, Follett & Stevens, or rather Follett, sold it to the defendant Seaver, for its full amount, without disclosing to him any of the circumstances in relation thereto. Follett guarantied the collection of the note and charged himself with the amount thereof on the books of the firm ; and took Seaver's note for $300, one half of which was paid a few days afterwards, and the residue remained unpaid at the time of the commencement of this suit. Seaver thereupon brought

a suit on the note in the supreme court against the maker and both of the endorsers of the note, jointly, and they subsequently tendered to him the sum of $258, which they insisted was all that he was equitably entitled to on the note ; which sum he refused to receive.   They also tendered the same sum to Follett & Stevens, and demanded from them the delivering up of the note ; which sum Follett & Stevens refused to receive, upon the ground that they had previously sold the note.

The complainants thereupon filed their bill in this cause, against Seaver, and against Follett & Stevens the original holders of the note, to stay the proceedings at law and for a discovery of the usury ; alleging, among other things, that the original note was made and endorsed for the purpose of raising money for the use of the maker thereof, and that the suit was prosecuted in the name of Seaver for the benefit of Follett & Stevens, and in order to deprive the complainants of their defence at law on the ground of usury.   The defendants denied all knowledge of the alleged fact that the original note did not belong to Hawkins at the time he sold the same to Follett & Stevens.   On the contrary Follett stated in his answer, that at the time of such sale he believed, from the representation made by Hawkins, that it was a valid and available note in the hands of the latter, which could be collected by him.   The cause was heard upon the pleadings and proofs.   The vice chancellor decreed that the complainants should pay to the defendant Seaver the amount advanced by Follett & Stevens to Hawkins on the original note, with interest thereon from the 8th of June, 1832, when the purchase of that note was made, and the costs in the suit at law upon the note and the costs of Seaver in the present suit, within thirty days, and that Seaver have execution therefor ; and that upon the payment of those sums Seaver be restrained from proceeding against the complainants in the supreme court or in any other court, upon the note, and that it be delivered up to be cancelled.   The vice chancellor also decreed a dismissal of the bill as against Follett & Stevens, with costs. The complainants appealed from the whole decree.

*E. C. Dibble,* for the appellants.

*D. H. Chandler,* for the respondents.

THE CHANCELLOR. I think there can be very little doubt as to what were the real merits of this case ; but there certainly is considerable difficulty in determining what is the proper decree to be made in the cause to protect the equitable rights of the several parties, who appear upon the record to have separate and distinct interests in relation to the subject of litigation. Upon a careful examination of the subject, however, I have arrived at the conclusion that the decree appealed from is erroneous, not only in form, but to a certain extent in substance.

One difficulty in the case arises out of the decision of the court for the correction of errors in the case of *Cram* v. *Hendricks,* (7 *Wend. Rep.* 569.) There is no admission or proof whatever in this case to establish the allegation in the bill that the original note was made for the purpose of raising money for the drawer ; and Follett states in his answer, that at the time of his purchase he believed it to be a good and available note in the hands of Hawkins. According to the case of *Cram* v. *Hendricks,* therefore, Follett & Stevens had the legal and equitable right to recover the whole amount of that note against the maker, and against L. Judd, the first endorser. But as against Hawkins, who sold the note to them, they were only entitled to recover the $279 which they actually paid to him for the note, with the legal interest on that amount from the time of the purchase. And as the substituted note, which Follett & Stevens afterwards received under the usurious agreement to receive twenty-eight per cent for the forbearance of payment for three months, was clearly void as to them, they still had the same equitable rights against the complainants respectively as if the original note had been retained by them ; less the amount of the usurious premium received upon such renewal. (*See Williams* v. *Allen,* 7 *Cowen's Rep.* 316.) And it would make no dif-

ference as to the equitable rights of Follett & Stevens, against either of these complainants, whether the $21 paid upon the renewal of the note was received from the maker, or the first endorser, or was advanced by Hawkins the second endorser out of his own funds. For in neither event would they have any equitable claim to be paid twice; but if the money was paid by Hawkins, he would be entitled to recover it of the maker, or first endorser of the note, if paid for their benefit. If the suit at law, therefore, had been brought by Follett & Stevens, and these facts had been proved, they would have been entitled to a verdict against the maker and the first endorser, for the full amount of the original note, and interest thereon from the time it became due; after deducting the $21 paid at the time of the renewal, and the interest thereon from that time. But as against Hawkins, the second endorser, who sold the first note, they would only have been entitled to a verdict for the $279 and interest from the time of the sale; after deducting the $21 afterwards paid, and interest thereon.

It appears by the answer of Seaver, that although he purchased the note bona fide, without notice of the usury or any of the other equities between the previous parties to the note, he had not, in fact, paid to Follett, at the time he had such notice by the filing of this bill, as much as was equitably due upon the note from each of the complainants. And it does not appear that the note which he gave to Follett, a part of which is still unpaid, was a negotiable note so that he can be made liable therefor to any other person. I am also inclined to think the evidence in the case establishes the fact that the note in question here was sold to Seaver after it had become due and was dishonored. Upon either of these grounds, therefore, if the facts admitted in the answer of Follett and Stevens had been established against the defendant Seaver, he would not have been entitled to protection as the bona fide holder of the note for a valuable consideration, for the whole amount thereof; under the provision of the revised statutes on that subject which was in force when the note

was transferred to him. (*See* 1 *R. S.* 772, § 5. *Hackley* v. *Sprague,* 10 *Wendell, Rep.* 113. *Wyatt* v. *Campbell,* 1 *Moody & Malk. Rep.* 80. *Crook* v. *Jadis,* 6 *Car. & Payne's Rep.* 191. *Vallance* v. *Siddel,* 2 *Nev. & Per. Rep.* 78.)

Another difficulty, however, presents itself upon this part of the case. The defendant Seaver, in his answer, denies all knowledge of the fact as to the purchase of the original note at a sum less than the full amount thereof, or indeed that there ever was such a note ; or that any usurious premium was demanded or received at the time of giving the note which he afterwards bought of Follett and Stevens, or of one of them. And there was no evidence whatever given in the cause to establish those facts as against him. The admissions in the joint and several answer of Follett and Stevens, and which the latter swears he believes to be true, are sufficient to found a decree upon against Follett, and his copartner who was bound by his acts in relation to the business of the firm. (*Pritchard* v. *Draper,* 1 *Russ. & My.* 191. *Wood* v. *Braddick,* 1 *Taunt. Rep.* 104.) But by the settled principles of this court that answer of Follett & Stevens is not legal evidence of any fact as against their co-defendant Seaver. (*Gresl. Eq. Ev.* 24. *Phenix* v. *Assignees of Ingraham,* 5 *John. Rep.* 313. *Morse* v. *Royal,* 12 *Ves. Rep.* 362. *Clark's adm.* v. *Van Reimsdyck,* 9 *Cranch,* 153.) The complainants, therefore, have wholly failed in making out a case entitling them to any relief against the defendant Seaver, who is entitled, both at law and in equity, to the whole amount of the note as against all of the complainants. And if the bill had been absolutely dismissed with costs as to tbe defendant Seaver, which would have been conclusive against them upon the question of usury in the suit at law, they would have had no right to complain of the decree in that respect. I think, however, the vice chancellor erred in making a decree against them in this court for the payment of any part of this note, and the costs in the supreme court absolutely ; and authorizing Seaver to take out exe-

*margin:*
1841.

Judd
v.
Seaver.

cution upon such decree. This court, in cases of usury, sometimes decrees payment to the defendant of the amount equitably due from the complainant to him. But those are cases in which the complainant has himself authorized the court to exercise such a jurisdiction ; by offering to pay whatever should be found to be so due, and waiving a forfeiture as to every thing, except the usurious premium. (1 *Sch. & Lef. Rep.* 441. 1 *Mad. Ch.* 4 *Am. ed.* 45.) The bill in this case contains no offer to pay the defendants any thing ; and if they had made that objection to the *discovery* of the usury they probably might have been excused from making a discovery, which might possibly subject them to the loss of what was equitably due on the note, as the law then stood. (*Livingston* v. *Harris*, 3 *Paige's Rep.* 528.) The bill being filed after the suit at law was at issue, if the complainants stayed the proceedings in that suit by injunction, as prayed for in their bill, it must have been upon the giving of security to pay the debt and costs which might be recovered in that suit, and also the costs which they might be decreed to pay in this court ; as directed in the statute. (2 *R. S.* 188, § 139.) Under such circumstances, as the absolute dismissal of the bill upon the merits as to Seaver, would be conclusive upon the rights of the complainants as between him and them in relation to every question which had been in issue and passed upon here, the proper decree, as to him, was a dismissal of the bill with costs ; and leaving him to his remedy upon his bond after he should have perfected his judgment at law. That part of the decree of the vice chancellor must be reversed and modified accordingly ; and without costs as to either of those parties as against the other on the appeal.

It remains to consider whether the vice chancellor was right in dismissing the bill, as against the other defendants absolutely, and with costs, notwithstanding the admissions in their answer. I have already stated what were the equitable rights of those parties respectively, in relation to this note and the usurious premium, as those rights existed

previous to the sale to Seaver. And no one who examines the pleadings and proofs in this case can for a moment doubt, that the whole object of that sale, on the part of Follett, was to deprive the complainants of the power to make any defence to a suit which might be brought for the collection of the note. For if it had remained the property of the firm, and had been sued in their names, Follett might have been compelled, upon a bill of discovery, to admit what is contained in his answer here. That would have formed a good defence to the suit upon the note pro tanto; even if the drawer and endorsers could not have given evidence for each other establishing the same facts. This, therefore, does not appear to be a case in which the vice chancellor, in the exercise of a sound discretion, should have awarded costs against the complainants in favor of Follett & Stevens.

. Besides, the decree is erroneous in dismissing the bill absolutely and unconditionally against those defendants. For if Seaver recovers the whole amount of this note against Hawkins as the endorser, when as between him and the other defendants he was only liable for the amount recovered by him on the purchase of the note, and legal interest thereon, he will be entitled to recover back the excess, in the equitable action of assumpsit, against those who have compelled him to pay it by selling the note without giving the purchaser notice of his rights. And perhaps it is not too late to recover back the usurious premium in the same manner. The bill should, therefore, as against those two defendants, have been dismissed without costs ; and without prejudice to the right which any of the complainants who may pay the note to Seaver, may have against Follett & Stevens, or either of them, on that account. That part of the decree must be reversed and modified accordingly ; and without costs to either party as against the other upon this appeal.