RICHARD A. MOTLEY, complainant-appellant,

*v.*

HENRY I. DARLING and CHARLES FLYNN, defendants-respondents.

[Argued March 9th, 1916.   Decided June 19th, 1916.]

A bill setting up that complainant had parted with certain property upon the defendants' undertaking to deliver as payment therefor certain endorsed notes which were executed and endorsed in complainant's pres-.ence, and that on delivery of the property defendants gave him notes forged both as to signature and endorsement instead of the real notes, which they destroyed, and praying discovery and establishment of the true notes and payment of the moneys due thereon by the maker and endorser—*Held*, erroneously dismissed for want of equity or because of adequate remedy at law.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis.

*Mr. Joseph Anderson, Sr.,* for the appellant.

*Mr. Charles E. S. Simpson,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The bill was dismissed for want of equity and because complainant had an adequate remedy at law.   There is no opinion of the vice-chancellor printed in the case, and we are therefore not apprised of the reasons for his action except so far as set out in the order itself.

We consider that the dismissal of the bill was erroneous.   It was predicated on the statements of the bill itself; for, although there was an answer and replication, the latter was struck out

and the answer withdrawn.; so the case stands as though there had been a demurrer or a motion to strike out the bill, and all the facts properly pleaded therein are taken as true.

The bill is for a discovery as to the execution of two notes, which were to have been signed by defendant Flynn and endorsed by defendant Darling and were to be delivered to complainant as the consideration for the sale and delivery by him of certain personal property, but which were not so delivered; and in view of the alleged fraudulent destruction of the notes by defendants, or one of them, for a decree establishing the same and directing the payment of the moneys payable thereunder. A perusal of the bill shows the perpetration of a deliberate fraud on complainant which ought especially to appeal to a court of equity and impel it to exercise its fullest powers by way of relief.

The bill sets up that complainant owned the lease of a garage property, and also owned certain automobiles and other personal property therein, all which defendant Darling wished to acquire, and, after negotiation, terms of sale were agreed on and a bill of sale was drawn with the vendee's name in blahk, the blank being filled in at the time of execution with the name of the defendant Flynn. There was also a written assignment of the lease. The price was $1,479.44. For payment of this, two notes were drawn payable to complainant, one of $500 at four months, and one of $700 at six months, both made by Flynn and endorsed by Darling, who also endorsed a note for Flynn of $300, to be discounted in order to enable the latter to pay the remainder to complainant in cash. The cash was paid, but, apparently, by agreement, the notes were withheld and placed in the hands of Darling's attorney, to be delivered when complainant should turn over to Flynn the possession of the garage and property, as well as the bill of sale and assignment of lease. The latter papers and the possession were duly delivered, but, instead of the genuine notes, two similar but forged notes were delivered; and complainant, believing them genuine, negotiated them, and afterward, when suit was brought on one of them, it was defeated on the ground of forgery; and, in view of this re-

sult, a suit brought on the other was discontinued, and complainant took both notes back.

The bill further charges that Darling in some way obtained possession of the genuine notes and destroyed them; and that by reason of the fraud practiced on him by the defendants, complainant has received neither the notes nor the money represented by them.

The equity of this bill seems almost too plain for discussion. It shows a vendor who has parted with his property for what he supposed to be the negotiable promises to pay of one defendant, and the endorsements of the other, to which he was entitled by his contract, and who finds he has two useless pieces of paper. If the notes as actually made were in existence, he would be entitled to ask specific performance of the agreement to deliver them. *Pattison* v. *Skillman, 34 N. J. Eq. 344; Schraff* v. *Wolters, 61 N. J. Eq. 467; Fred* v. *Fred, 50 Atl. Rep. 776.* As they appear to be destroyed, the suit takes the form of a bill for the discovery and establishment of instruments, lost or destroyed, not by complainant, but by defendants in fraud of his rights, and not merely negligently or by inadvertence, as in *Wells* v. *Flitcraft, 43 Atl. Rep. 659,* and, on the theory of retaining the case and administering a complete remedy, for a decree to pay the moneys due. Both discovery and the establishment of lost instruments are peculiarly subjects of equitable cognizance and relief, especially in cases of fraud, so that the equity of the bill is plain. As to adequacy of the remedy at law, neither replevin nor trover will recover the destroyed notes; and complainant cannot sue on them as existing obligations, for he does not hold them, and never did hold them, because they were never delivered to him. His only recourse at law would be a suit for damages by reason of their non-delivery, which would raise issues that might result in an entire denial of justice, which has already, if the bill be true, been too long delayed.

The decree of the court of chancery will be reversed and the record remitted, to the end that the defendants be required to answer and the causes therein proceeded with in accordance with these views.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Terhune, Heppenheimer, Williams, Taylor, Gardner—15.